**PITNEY HARDIN LLP**
(MAIL TO) P.O. BOX 1945 MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300
Attorneys for Plaintiff
Days Inns Worldwide, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., formerly known as DAYS INNS OF AMERICA, INC., a Delaware Corporation, | : <br> : <br> : Civil Action No. 06- <br> : |
| Plaintiff, | : |
| v. | : **VERIFIED** |
| | : **COMPLAINT** |
| KRISHNA-VISION, LLC, an Alabama Limited Liability Company; SURESH PATEL A/K/A SURESH DAYAL, an individual; and MAHESH PATEL A/K/A MAHESH DAYAL, an individual, | : <br> : <br> : <br> : |
| Defendants. | : |

Plaintiff Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc., by its attorneys, Pitney Hardin LLP, complaining of defendants Krishna-Vision, LLC, Suresh Patel a/k/a Suresh Dayal, and Mahesh Patel a/k/a Mahesh Dayal, says:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc. ("DIW"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2. Defendant Krishna-Vision, LLC ("Krishna-Vision"), on information and belief, is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business at 6101 1st Avenue North, Birmingham, Alabama.

3. Defendant Suresh Patel a/k/a Suresh Dayal ("Suresh"), on information and belief, is a member of Krishna-Vision and a citizen of the State of Alabama, residing at 3611 Vicksburg Drive, Birmingham, Alabama.

4. Defendant Mahesh Patel a/k/a Mahesh Dayal ("Mahesh"), on information and belief, is a citizen of the State of Alabama, with a business address at 6101 1st Avenue North, Birmingham, Alabama.

5. Non-Defendant Bhanu Patel a/k/a Bhanu Dayal ("Bhanu"), on information and belief, is a member of Krishna-Vision and a citizen of the State of Alabama, with a business address at 6101 1st Avenue North, Birmingham, Alabama.

6. Upon information and belief, Suresh and Bhanu are the only constituent members of Krishna-Vision.

7. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Krishna-Vision by virtue of, among other things, section 17.4 of the April 23, 1997 License Agreement by and between Krishna-Vision and DIW (the "License Agreement"), described in more detail below, pursuant to which Krishna-Vision has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

10. This Court has personal jurisdiction over Suresh and Mahesh by virtue of, among other things, the terms of a Guaranty (the "Guaranty"), described in more detail below, pursuant to which Suresh and Mahesh acknowledged that they were personally bound by section 17 of the License Agreement.

11. Venue is proper in this District pursuant to section 17.4 of the License Agreement, inasmuch as that provision contains an express waiver by Krishna-Vision of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Days Marks

12. DIW is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

13. DIW has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Days Marks"), as well as the distinctive Days Inns® System, which provides hotel services to the public under the Days name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

14. DIW or its predecessors have continuously used each of the Days Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

15. DIW has given notice to the public of the registration of the Days Marks as provided in 15 U.S.C. § 1111.

- 4 -

16. DIW uses or has used the words "Days Inn," among others, as abbreviations of its brand name.

17. Through its franchise system, DIW markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their guest lodging services, DIW allows its franchisees to utilize the Days Marks and to promote the Days Inn brand name.

18. DIW has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Days Marks as distinctly designating DIW guest lodging services as originating with DIW.

19. The value of the goodwill developed in the Days Marks does not admit of precise monetary calculation, but because DIW is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of DIW's goodwill exceeds hundreds of millions of dollars.

20. The Days Marks are indisputably among the most famous in the United States.

## The Agreements Between The Parties

21.  On or about April 23, 1997, DIW entered into the License Agreement with Krishna-Vision for the operation of a 143-room guest lodging facility located at 5101 Messer Airport Highway, Birmingham, Alabama, Site No. 6495 (the "Facility").  A true copy of the License Agreement is attached hereto as Exhibit A.

22.  Pursuant to section 5 of the License Agreement, Krishna-Vision was obligated to operate a Days Inn guest lodging facility for a 15-year term, during which time Krishna-Vision was permitted to use the Days Marks in association with the operation and use of the Facility as part of DIW's franchise system.

23.  Pursuant to section 3.1 of the License Agreement, Krishna-Vision was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by DIW.

24.  Pursuant to section 3.4 of the License Agreement, Krishna-Vision was required to operate the Facility in compliance with DIW's "System Standards," as defined in the

- 6 -

License Agreement, including DIW's quality assurance requirements.

25. Pursuant to section 4.8 of the License Agreement, DIW had the "unlimited right to conduct unannounced quality assurance inspections of the Facility" (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with DIW's quality assurance requirements.

26. Pursuant to sections 7 and 18.3 and Schedule C of the License Agreement, Krishna-Vision was required to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

27. Pursuant to section 3.9 of the License Agreement, Krishna-Vision was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Krishna-Vision at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

28. Pursuant to section 3.9 of the License Agreement, Krishna-Vision agreed to maintain at the Facility accurate financial information, including books, records, and accounts,

- 7 -

relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, Krishna-Vision agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

29. Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to Krishna-Vision, for various reasons, including Krishna-Vision's (a) failure to pay any amount due DIW under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the License Agreement, and (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

30. Pursuant to section 12.1 of the License Agreement, Krishna-Vision agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement.

31. Section 18.4 specifically capped liquidated damages for the Facility at $200,000.00.

32. Section 13 of the License Agreement specified Krishna-Vision's obligations in the event of a termination of

the License Agreement, including its obligation to immediately cease using all of the Days Marks.

33. Pursuant to section 13.2 of the License Agreement, Krishna-Vision agreed that, in the event the License Agreement is terminated, DIW has the right to, "without prior notice enter the Facility and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that [Krishna-Vision did] not remove[] or obliterate[] within five days after termination."

34. Pursuant to section 17.4 of the License Agreement, Krishna-Vision agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

35. Effective as of the date of the License Agreement, Suresh and Mahesh provided DIW with the Guaranty, a true copy of which is attached hereto as Exhibit B.

36. Pursuant to the terms of the Guaranty, Suresh and Mahesh agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and

- 9 -

perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement."

37. Pursuant to the terms of the Guaranty, Suresh and Mahesh agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement.

The Defendants' Defaults and Termination

38. Beginning in 2003, Krishna-Vision repeatedly failed to operate the Facility in accordance with DIW's System Standards, in breach of its obligations under the License Agreement.

39. On October 15, 2003, DIW conducted a quality assurance ("QA") inspection of the Facility. By letter dated January 15, 2004, a true copy of which is attached hereto as Exhibit C, DIW advised Krishna-Vision that (a) the Facility received a failing score in the QA inspection, (b) pursuant to the License Agreement, DIW could send the Facility a notice of default due to the failing score, (c) DIW did not send a notice of default in anticipation of the Facility's timely remedy of the failure, (d) the Facility would receive a notice of default if it did not achieve a passing score on the next QA inspection, and (e) if a default occurred, then the Facility's access to the central reservation system might be suspended.

40. On February 3, 2004, DIW conducted a QA inspection of the Facility. By letter dated March 11, 2004, a true copy of which is attached hereto as Exhibit D, DIW advised Krishna-Vision that (a) the Facility received a failing score in the QA inspection and, as a result, Krishna-Vision was in default of its obligations under the License Agreement, (b) pursuant to the License Agreement, it had 30 days within which to cure the QA default, and (c) if the default was not cured, then certain special stipulations in the License Agreement would automatically terminate, and the License Agreement might be subject to termination.

41. On July 15, 2004, DIW conducted another QA inspection of the Facility. By letter dated September 10, 2004, a true copy of which is attached hereto as Exhibit E, DIW advised Krishna-Vision that (a) the Facility received a third consecutive failing score in the QA inspection and, as a result, Krishna-Vision remained in default of its obligations under the License Agreement, (b) it had until November 9, 2004 to cure the QA default, (c) if it failed to cure the default, Termination of the License Agreement would be effective on November 30, 2004, unless DIW extended the termination date, (d) it was invited to contact the Director of Quality Assurance if it required assistance in developing a product improvement plan to cure the default, and (e) if the License Agreement was terminated,

Krishna-Vision would be required to pay to DIW liquidated damages and outstanding Recurring Fees and other charges incurred through November 30, 2004.

42. By letter dated December 10, 2004, a true copy of which is attached hereto as Exhibit F, DIW terminated the License Agreement and advised Krishna-Vision that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Days Facility, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Days System facility, (b) all items bearing the Days Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Days Inn had to be changed, (d) it was required to pay to DIW as liquidated damages for premature termination the sum of $200,000.00 as required under the License Agreement, (e) it had to de-identify the Facility within 14 days from the date of the notice, and (f) demand was made for all outstanding Recurring Fees through the date of complete de-identification.

43. The termination of the License Agreement precludes Krishna-Vision from any further use of the Days Marks in or around the Facility.

- 12 -

44. The termination of the License Agreement precludes Krishna-Vision from any further use of the Days Marks to induce the traveling public to use the Facility in any way.

45. Since the termination of the License Agreement, Krishna-Vision has continued to use the Days Marks to induce the traveling public to rent guest rooms at the Facility.

46. Since the termination of the License Agreement, Krishna-Vision has used the Days Marks without authorization to rent rooms through failure to remove Days signage.

47. By letters dated March 11, 2005, June 29, 2005, September 28, 2005, and January 26, 2006, true copies of which are attached hereto as Exhibits G, H, I, and J respectively, DIW reiterated Krishna-Vision's post-termination obligations under the License Agreement, including the requirement that, upon termination, Krishna-Vision completely "de-identify" the Facility as a Days Inn.

48. Krishna-Vision has continued to misuse the Days Marks despite receiving several notifications from DIW to cease and desist from the misuse of the Days Marks.

- 13 -

**FIRST COUNT**

49. DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 48 of the Verified Complaint.

50. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

51. Krishna-Vision marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

52. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false

designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

53.  The acts of Krishna-Vision in marketing, promoting, and renting rooms at the Facility, through and with the Days Marks, constitute:

(a)  a false designation of origin;

(b)  a false and misleading description of fact; and

(c)  a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Krishna-Vision's Facility with DIW, and to cause confusion, or to cause mistake, or deception, to the effect that DIW sponsors or approves of the guest lodging services that Krishna-Vision provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

54.  Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a

famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

55. Krishna-Vision's use of the Days Marks in connection with goods and services at the Facility, after the Days Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Days Marks, and lessened and will continue to lessen the capacity of the Days Marks to identify and distinguish the goods and services of DIW, all in violation of Section 43(c) of the Lanham Act.

56. Krishna-Vision's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

57. Krishna-Vision's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on DIW.

58. DIW has no adequate remedy at law.

- 16 -

59. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), DIW demands judgment against Krishna-Vision:

(a) Preliminarily and permanently restraining and enjoining Krishna-Vision, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Days Marks; and

(b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

60. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 59 of the Verified Complaint.

61. Pursuant to sections 3.8 and 4.8 of the License Agreement, Krishna-Vision agreed to allow DIW to examine, audit, and make copies of Krishna-Vision's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

- 17 -

62.   Krishna-Vision has engaged in acts and practices, as described, which amount to infringement of the Days Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

63.   As a result, Krishna-Vision owes restitution and the disgorgement of profits, in an amount unknown to DIW, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Krishna-Vision.

**WHEREFORE,** DIW demands judgment ordering that Krishna-Vision account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Days Marks.

**THIRD COUNT**

64.   DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 63 of the Verified Complaint.

65.   On December 10, 2004, DIW terminated the License Agreement.

66.   Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due

to action of the Licensee, Krishna-Vision shall pay liquidated damages to DIW within 30 days of termination.

67. As a result of the termination of the License Agreement, Krishna-Vision is obligated to pay DIW liquidated damages in the amount of $200,000.00, as calculated pursuant to sections 12.1 and 18.4 of the License Agreement.

68. Notwithstanding DIW's demand for payment, Krishna-Vision has failed to pay DIW the liquidated damages as required in section 12.1 of the License Agreement.

69. DIW has been damaged by Krishna-Vision's failure to pay liquidated damages.

**WHEREFORE**, DIW demands judgment against Krishna-Vision for liquidated damages in the amount of $200,000.00, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

70. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 69 of the Verified Complaint.

71. By virtue of the premature termination of the License Agreement, DIW sustained a loss of future revenue over the remainder of the 15-year term of the License Agreement.

72. If the Court determines that Krishna-Vision is not liable to pay DIW liquidated damages as required by section 12.1 of the License Agreement then, in the alternative, Krishna-Vision is liable to DIW for actual damages for the premature termination of the License Agreement.

73. DIW has been damaged by Krishna-Vision's breach of its obligation to operate a Days guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE,** DIW demands judgment against Krishna-Vision for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

<u>**FIFTH COUNT**</u>

74. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 73 of the Verified Complaint.

75. Pursuant to sections 7 and 18.3 and Schedule C of the License Agreement, Krishna-Vision was obligated to remit Recurring Fees to DIW.

76. Despite its obligation to do so, Krishna-Vision failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $10,783.13.

- 20 -

77. Krishna-Vision's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Krishna-Vision for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit.

### SIXTH COUNT

78. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 77 of the Verified Complaint.

79. At the time of the termination of the License Agreement, Krishna-Vision was obligated to pay DIW Recurring Fees.

80. Despite its obligation to do so, Krishna-Vision failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $10,783.13.

81. In addition, Krishna-Vision benefited from its wrongful use of the Days Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to DIW in return for that benefit.

82. Krishna-Vision's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE,** DIW demands judgment against Krishna-Vision for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit and all royalties and other Recurring Fees that should be paid to compensate DIW for the period during which Krishna-Vision misused the Days Marks and was thereby unjustly enriched, together with interest and costs of suit.

### SEVENTH COUNT

83. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 82 of the Verified Complaint.

84. On December 10, 2004, DIW terminated the License Agreement.

85. Section 13.2 provides that, when the License Agreement is terminated, DIW has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility that [Krishna-Vision did] not remove[] or obliterate[] within five days after termination."

86. Krishna-Vision continues to market, promote, and rent rooms at the Facility through the unauthorized use of the

- 22 -

Days Inn Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

87. Krishna-Vision's unauthorized use of the Days Inn Marks has inflicted and continues to inflict irreparable harm on DIW.

**WHEREFORE,** DIW demands judgment declaring that DIW or its authorized agent, has the right, without prior notice to Defendants, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks.

## EIGHTH COUNT

88. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 87 of the Verified Complaint.

89. Pursuant to the terms of the Guaranty, Suresh and Mahesh agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Krishna-Vision under the License Agreement.

90. Despite their obligation to do so, Suresh and Mahesh have failed to make any payments or perform or cause

- 23 -

Krishna-Vision to perform each obligation required under the License Agreement.

91. Pursuant to the Guaranty, Suresh and Mahesh are liable to DIW for Krishna-Vision's liquidated damages in the amount of $200,000.00, or actual damages in an amount to be determined at trial, and Krishna-Vision's Recurring Fees due and owing under the License Agreement, and for those additional Recurring Fees attributable to the period during which Krishna-Vision has misused the Days Marks.

**WHEREFORE,** DIW demands judgment against Suresh and Mahesh for damages in the amount of:

(a) All liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit; and

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate DIW for the period during which Krishna-Vision misused the Days Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.

PITNEY HARDIN LLP
Attorneys for Plaintiff
Days Inns Worldwide, Inc.

By: _Dennis R. Lafiura_
         **DENNIS R. LAFIURA**
         **A Member of the Firm**

Dated: October 26, 2006

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**PITNEY HARDIN** LLP
Attorneys for Plaintiff
Days Inns Worldwide, Inc.

By: _Dennis A. LaFiura_
       **DENNIS R. LAFIURA**

Dated: October 26, 2006

**VERIFICATION**

STATE OF NEW JERSEY )
                      ) ss:
COUNTY OF MORRIS )

       Valerie Capers Workman, of full age, being duly sworn according to law, upon her oath, deposes and says:

       1. I am Vice President, Franchise Administration, of Days Inns Worldwide, Inc. ("DIW"), which is plaintiff in this action.

       2. I have read the foregoing Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Complaint are true based on my personal knowledge, the records of DIW or information available through employees of DIW.

                                           VALERIE CAPERS WORKMAN

Sworn and subscribed to before
me this 23 day of October , 200 6

                          
NOTARY PUBLIC

**Linda M. Rubiano**
**Notary Public**
**State of New Jersey**
**My Commission expires** 2-5-09

       – 27 –